**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GAMALIER REYES RIVERA,<br><br>                                    Petitioner,<br><br><br>               v.<br><br><br> AMY MILLER, Warden, et al.,<br><br><br>                                    Respondents. | Civil No.     13-cv-2708-H (DHB)<br><br>**REPORT AND RECOMMENDATION RE:**<br><br>**(1) DISMISSING ATTORNEY GENERAL AS RESPONDENT;**<br><br>**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS; and**<br><br>**(3) DENYING REQUEST FOR EVIDENTIARY HEARING** |

**I.     INTRODUCTION**

        Petitioner Gamalier Reyes Rivera, a state prisoner proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenges his conviction in San Diego County Superior Court Case No. SCN264236 for two counts of attempted murder, two counts of aggravated mayhem, one count of burglary, and two counts of assault with a deadly weapon, as well as allegations relating to the personal use of weapons and personal infliction of injury.  (Pet. at 6-18, ECF No.

1 (Pet.).)[1]  The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse, the lodgments, the record, and all the supporting documents submitted by both parties.  For the reasons discussed below, the Court recommends the Petition and the Petitioner's request for an evidentiary hearing be **DENIED**.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The following facts are taken from the California Court of Appeal opinion:

> Rivera married Erika Von Der Heyde in 2002.  They had a daughter and lived together in San Ysidro until they divorced in 2006.  They remarried in 2007 and lived together in Imperial Beach, but separated again in December 2008, and began divorce proceedings for a second time.  They both started dating other people.  However, the divorce was contentious.  They argued over custody and support issues.  Eventually, Von Der Heyde restricted communication with Rivera through her attorney only.

> On or about July 5, 2009, Von Der Heyde, along with her daughter, moved into her boyfriend's home in Escondido.  Von Der Heyde decided to move to Escondido from Imperial Beach because she was afraid Rivera was going to take their daughter and flee to Puerto Rico.  Von Der Heyde slept in a bedroom with Jesus Vinas, her boyfriend, and her daughter slept in a separate room.  Two other couples also lived in the house.  One of those couples was Chris Anguiano and Samantha Shaffer, who shared a bedroom in the house as well.

> On the night of July 8, 2009, sometime around midnight, Rivera hired a taxi to drive him from Imperial Beach to Escondido, a distance of about 45 to 50 miles.  He hired a taxi despite the fact that he owned a vehicle he could have driven that night.  He left the vehicle in its parking space at his apartment and called a taxi from a 7-Eleven that was between a half-mile to a mile away from his residence.  He left his television on and the front door to his apartment unlocked.  Rivera also did not bring his cell phone with him.  Although he did not recall why he left it, he did admit the cell phone could have been used to track his position.

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

13cv2708

After arriving at Vinas's house, Rivera entered it, armed with two hatchets, and walked into a bedroom where Anguiano and Shaffer lay sleeping. A dog in the bedroom started barking, which caused Anguiano to wake up. Anguiano reached across Shaffer to grab his glasses from a window sill. At that moment, Rivera started hitting Anguiano with a hatchet. He hit him first in the chest, causing Anguiano to fall on top of Shaffer who was lying in bed. Rivera continued his attack on Anguiano, striking his back with a hatchet several times. When Anguiano was finally able to stand up, Rivera struck him in the face with a hatchet. Anguiano attempted to defend himself, was able to throw Rivera to the ground, but Rivera struck him again in the face with the hatchet. Anguiano eventually passed out on the bedroom floor. At one point during the struggle, Rivera moved toward Shaffer.

During the attack, Shaffer was screaming, which woke up Vinas, and he went to her bedroom. He pulled Rivera away from Anguiano and dragged him out of the room. Vinas struggled with Rivera, and Rivera eventually dropped one hatchet he still possessed (the other hatchet was found in the house, apparently dropped by Rivera earlier). At that point, Rivera fled the house, but was arrested a short time later at a nearby 7-Eleven.

Anguiano suffered life threatening injuries from the attack, including a deep laceration to his face and one to his lower neck, which cut across the trachea, through the clavicle and down to the deltoid muscle. He also suffered lacerations to his arms and back. Due to his blood loss, Anguiano went into full cardiac arrest about 20 minutes after arriving at the hospital. Anguiano underwent surgery, and remained in a coma for about two months. As a result of his injuries, Anguiano suffers from a host of significant problems. He has a grossly abnormal gait, has problems with balance and coordination, and is blind. He also suffers symptoms of posttraumatic stress disorder (PTSD), including insomnia, depression, nightmares, and flashbacks.

Shaffer suffered injuries to her thighs, knees and a toe from Rivera's hatchet attack. She has scars on her legs and endures chronic pain in her legs. She is unable to work because she cannot stand for long periods of time and suffers from PTSD.

*Defense*

Rivera testified on his own behalf. He admitted entering Vinas's house armed with two hatchets and using the hatchets to inflict the injuries suffered by Anguiano and Shaffer. However, he testified he did not intend to hurt anyone when he entered the house, and he inflicted the injuries only in self-defense after Anguiano attacked him. Rivera explained that his plan was to enter the house and only scare Von Der Heyde with the hatchets. Although he had a service firearm from his job as a border patrol agent, he decided to bring hatchets, not his gun, because he believed hatchets were "the scariest thing." His purported purpose for this plan was to motivate Von Der Heyde to become more cooperative regarding custody of their daughter. He testified that his plan went awry when the first room he entered happened to be occupied by Anguiano and Shaffer instead of Von Der Heyde.

(Lodgment No. 7 at 2-5.)

13cv2708

### III. PROCEDURAL BACKGROUND

On February 26, 2010, the San Diego County District Attorney's Office filed an information charging Gamalier Reyes Rivera with four counts of attempted first degree murder (counts one, two, three, and six), a violation of California Penal Code (Penal Code) §§ 187(a)/664, two counts of torture (counts four and seven), a violation of Penal Code § 206, two counts of aggravated mayhem (counts five and eight), a violation of Penal Code § 205, one count of residential burglary (count nine), a violation of Penal Code §§ 459/460. (Lodgment No. 1 at 0011-15.) As to counts three, four, five, six, seven, and eight, the information alleged Rivera personally used a deadly weapon, within the meaning of Penal Code § 12022(b)(1); as to counts three and six, the information alleged Rivera had personally inflicted great bodily injury, within the meaning of Penal Code § 12022.7(a). (*Id.*)

At the close of the prosecution's case, the trial judge granted a motion pursuant to Penal Code 1118[2] as to counts three and six, the attempted murder charges against victims Anguiano and Shaffer. (Lodgment No. 3, vol. 5 at 280.) The prosecutor then amended the information to charge Rivera with assault with a deadly weapon as to Anguiano and Shaffer, counts ten and eleven. (Lodgment No. 3, vol. 6 at 373; Lodgment No. 0016-21.) At the conclusion of the jury trial, Rivera was found guilty of counts one, two, five, eight, nine, ten, and eleven, and not guilty of counts four and seven (the torture counts). (*Id.* at 0189-95.) The jury also found the enhancements associated with the guilty verdicts to be true. (*Id.*) Rivera was sentenced to four terms of life with the possibility of parole plus two years in state prison. (*Id.* at 0240-43.)

---

[2] California Penal Code § 1118 states:
    In a case tried by the court without a jury, a jury having been waived, the court on motion of the defendant or on its own motion shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right.

Rivera filed a direct appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment No. 4.) The state appellate court affirmed Rivera's convictions in an unpublished written opinion. (Lodgment No. 7.) Rivera then filed a Petition for Review in the California Supreme Court, which denied the petition without citation of authority. (Lodgment Nos. 8-13.)

Following that denial, Rivera filed a petition for writ of habeas corpus in the San Diego Superior Court. (Lodgment No. 10.) The superior court denied the petition in an unpublished order. (Lodgment No. 11.) Rivera then filed a petition for writ of habeas corpus in the California appellate court. (Lodgment No. 12.) The appellate court denied the petition in an unpublished order. (Lodgment No. 13.) Finally, Rivera filed a habeas corpus petition in the California Supreme Court, which denied the petition without citation of authority. (Lodgment Nos. 14-15.)

On November 8, 2013, Rivera filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court [ECF No. 1]. Respondent filed an Answer and Memorandum of Points and Authorities in Support of the Answer on April 9, 2014 [ECF No. 17]. Rivera filed a Traverse on July 23, 2014 [ECF No. 24].

## IV. DISCUSSION

Rivera originally raised six claims in his Petition. First, Rivera argued his appellate counsel was ineffective. Second, he claimed trial counsel was ineffective. In claim three, Rivera contended the prosecutor committed misconduct by misstating the evidence produced at trial during closing argument and presenting perjured testimony. Fourth, Rivera argued the trial court did not properly instruct the jury. Fifth, he claimed the trial court improperly admitted evidence. And sixth, he contended the trial court had a sua sponte duty to instruct the jury on lesser included offenses. (Pet. at 6-18.) In his Traverse, Rivera voluntarily dismissed claims three(b), five and six. (*See* Traverse at 33, 37, ECF No. 24.) He also asks for an evidentiary hearing. (*Id.* at 37.)

Respondent argues Kamala Harris should be removed as a Respondent in this case. (Mem. of P. & A. Supp. Answer (Answer) at 15, ECF No. 17.) Further, Respondent

contends claim four is procedurally barred.  (*Id.* at 15-18.)  In addition, Respondent argues the state courts' resolution of the claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer at 38.)

A. *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Id.*  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable."  *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (*overruled on other grounds by Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. *Removal of Kamala Harris as Respondent*

Respondent argues Attorney General Kamala Harris should be removed as a Respondent in this matter. (Answer at 15.) The Court agrees. The Attorney General of the State of California is not a proper respondent in this action. Rule 2 of the Rules following § 2254 provides that the state officer having custody of the petitioner must be named as respondent. Rule 2(a), 28 U.S.C. foll. § 2254. However, "if the applicant is not presently in custody pursuant to a state judgement against which he seeks relief but may be subject to such custody in the future," then "the officer having present custody of the applicant as well as the attorney general of the state in which the judgment which he seeks to attack was entered shall each be named as respondents." Rule 2 (b), 28 U.S.C. foll. § 2254. Here, there is no basis for Petitioner to have named the Attorney General as a respondent in this action.

/ / /

C. *Ineffective Assistance of Trial Counsel (claim two)*[3]

Rivera asserts trial counsel was ineffective for several reasons.  First, Rivera contends trial counsel undermined his defense by conceding he had committed a burglary and by telling the jury, "I will concede, Mr. Rivera has an interest in lying to you." (Pet. at 8; Traverse at 22-26.)  Next, Rivera argues counsel did not properly cross examine the two victims, Anguiano and Shaffer, and a witness, Vinas, about inconsistencies in their testimony about the attack. (Pet. at 9-11; Traverse at 30-31.)  Rivera also claims counsel should have asked for specific jury instructions, CALCRIM No. 3470 (accident or misfortune) and CALCRIM 3470 (self defense). (Pet. at 11; Traverse at 27-30.)  Finally, Rivera argues the prosecutor committed misconduct when he argued false evidence to the jury and counsel should have objected to those statements. (Pet. at 11; Traverse at 31.)  Respondent contends the state court's resolution of these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer at 18-26.)

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  He must also show he was prejudiced by counsel's errors. *Id.* at 694.  Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Further, *Strickland* requires that"[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable

---

[3] The Court will address Rivera's ineffective assistance of trial counsel claims (ground two) before his ineffective assistance of appellate counsel claims (ground one) because the resolution of ground one depends on the resolution of ground two.

professional assistance." *Id.* at 686-87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "The standards created by *Strickland* and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 788 (2011) (citations omitted).  These standards are "difficult to meet" and "demand[] that state court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011). Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," and not simply as a means of error correction.  *Richter*, 131 S. Ct. at 786, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979).  "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial."  *Strickland*, 466 U.S. at 687.

Rivera first raised his ineffective assistance of counsel claims in the San Diego Superior Court. (Lodgment No. 10.)  The superior court denied the claims, stating as follows:

> All of Petitioner's claims are matters which are on the record and which could have been addressed on appeal.  Contentions which could have been raised on appeal or which were raised and rejected on appeal ordinarily cannot be renewed in a petition for writ of habeas corpus because habeas corpus ordinarily cannot serve as a second appeal.  *In re Dixon* (1953) 41 Cal.2d 756, 759; *In re Waitress* (1965) 62 Cal.2d 218.  Postappeal collateral attacks will only serve as a second appeal under four very narrow exceptions: constitutional error is clear and strikes at the heart of the trial process; lack of fundamental jurisdiction; the trial court acted in excess of jurisdiction that does not require a redetermination of fact; or there was a change in the law after appeal.  *In re Harris* (1993) 5 Cal.4th 813.  None of these exceptions apply here.

> . . . .

> It is not clear that Petitioner's trial attorney made any unprofessional errors which were not the result of an informed choice among tactical alternatives. Further, given the great weight of the evidence, Petitioner has failed to show a reasonable probability that the result of the proceedings would have been different.

(Lodgment No. 11 at 2.)

Rivera next raised this claim in the habeas corpus petition he filed in the California Court of Appeal. (Lodgment No. 12.)  The appellate court denied the petition in a order, stating as follows:

> The petition is procedurally barred to the extent is raises issues with respect to trial counsel's failure to render effective assistance and instructional error.  These claims could have been raised on appeal, and Rivera has not established his claims fall within any exception to the procedural bar.  (*In re Reno* (2012) 55 Cal.4th 428, 477-478.)

(Lodgment No. 13 at 1.)

Finally, Rivera raised his ineffective assistance of trial counsel claims in the California Supreme Court. (Lodgment No. 14.)  That court denied the petition without citation of authority. (Lodgment No. 15.)

Respondent does not allege the ineffective assistance of counsel claims are procedurally defaulted, and thus that defense, if applicable, is waived.  *Morrison v. Mahoney*, 399 F.3d 1042, 1046 n.4 (9th Cir. 2005).  Because the last reasoned state court decision to address these claims is the state appellate court's opinion which did not address the merits, however, it is not clear whether this Court should look to the superior court's analysis of Rivera's claims and review them under the deferential standard of AEDPA, or look to the appellate court's analysis and review them under the standard enunciated in *Pirtle v. Morgan*, 313 F.3d 1060, 1067 (9th Cir. 2005) (holding that "when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo").  The Court need not decide this issue, however, because even under the more liberal *Pirtle* standard, Rivera's claims fail.

### 1. *Undermining the Defense*

Rivera contends his trial counsel undermined his defense in several ways. (Pet. at 8-11; Traverse at 22-31.)  Rivera claims counsel conceded he was guilty of burglary and murder and contradicted Rivera's testimony during closing argument.  And, he claims counsel improperly told the jury Rivera had an interest in lying to them. (Pet. at 8-11; Traverse at 22-31.)  The analysis of this claim must begin with a discussion of counsel's

1 strategy.

2      Rivera testified in his own defense.[4]  He admitted to entering Vinas's home and

3 inflicting the injuries on Anguiano and Shaffer, but claimed he intended only to scare

4 Von Der Heyde into concessions about the custody of their child.  After he entered, he

5 got into an altercation with Anguiano who attacked him, and accidentally injured Shaffer.

6 Thus, the only issue for the jury to determine was Rivera's intent.

7      During closing argument, counsel did concede the facts showed Rivera committed

8 a burglary when he stated: "The burglary is something else you don't have to worry

9 about.  He broke in. There was some nefarious purpose.  You will decide what that

10 purpose was, but he wasn't there to visit his kid, so we're going to concede to burglary

11 too."  (Lodgment No. 3, vol. 6 at 421.)  Residential burglary in California generally

12 requires only that a person enter a residence with the intent to commit any felony, and a

13 jury is usually so instructed.  Cal. Penal Code § 459.  In this case, however, the jury

14 instructions specifically required the jury to find Rivera entered Vinas's house with the

15 intent to commit attempted murder, torture, aggravated mayhem or assault with a deadly

16 weapon.  (Lodgment No. 1 at 0181.)[5]  Thus, by conceding Rivera was guilty of burglary,

17 counsel also appears to have conceded he had the intent to commit attempted murder,

18 torture, aggravated mayhem, or assault with a deadly weapon.

19      Given the facts of the case, however, counsel made a reasonable tactical decision

20 to focus on disproving the intent elements of the most serious charges, the attempted

21 murder, torture and mayhem charges, while building credibility with the jury by

22 admitting Rivera's guilt on the crimes he admitted committing: the assault with a deadly

23 weapon on Anguiano and the burglary charge.  To be convicted of assault with a deadly

---

24

25      [4] Rivera clearly expressed on the record his desire to testify.  (*See* Lodgment No. 3, vol. 5 at 268.)

26      [5] The original jury instructions for the crime of burglary omitted the offense of
27 assault with a deadly weapon. (Lodgment No. 1 at 181.)  During deliberations, the jury
sent a note out, which stated, in part: "Since the charge of "Assault With a Deadly
28 Weapon" came in at the last moment, was it inadvertently omitted from [the definition
of burglary]?"  (*Id.* at 144.)  The Court replied: "The answer is yes.  The assault with a
deadly weapon was left out in instruction 1700 by mistake of the court."  (*Id.* at 145.)

weapon, Rivera need only have done an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person.  (*See* Lodgment No. 1 at 0178-79 (CALCRIM 875).)  Actual physical contact is not required, nor is the prosecution required to prove a person "actually intended to use force against someone when he/she acted."  (*Id.*)  By admitting he entered Vinas's house with the hatchets intending to frighten and intimidate Von Der Heyde, Rivera admitted he did an act with a deadly weapon — entered Vinas's house and a darkened bedroom inside the house in the middle of the night armed with two hatchets — that directly and probably resulted in the application of force to a person.

Even if counsel's statements during closing argument were unreasonable under *Strickland*, however, Rivera also must show he was prejudiced by counsel's error by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 at U.S. 694.  Rivera has not established prejudice because the evidence of his guilt was overwhelming.  Rivera admitted he went to Vinas's house armed with two hatchets.  (Lodgment No. 3, vol. 5 at 296-98.)  He made efforts to cover his tracks by calling a taxi from a phone at a 7-Eleven up to a mile away from his house to take him to Vinas's house.  (*Id.* at 299.)  This enabled him to leave his car at his residence, making it appear he was at home at the time of the crime.  (*Id.* at 335.)  In addition, he left his house unlocked, the television on, and his cell phone at home in a further effort to establish an alibi.  (*Id.* at 333-35.)  When he arrived in Escondido, he had the taxi driver drop him off several blocks away from Vinas's house.  (*Id.* at 300.)  Rivera's claim that he only intended to frighten Von Der Heyde regarding a custody dispute about the daughter they shared is not credible.

In addition, evidence was presented that Von Der Heyde discovered a list written by Rivera while they were married.  The list read as follows:

Getting Rid of the Wasted

1. Tools, gloves, bag big and dark, zip ties, weights, boots, bag for boots and gloves

2. 4/17/05 Surveillance on area (late hours).  Find a spot for vehicle away from road view.  Learn best route from vehicle to mint.

3.  Snap it, rope it, bag it, dump it.  Leave no prints.

4. Throw away gloves and boots separately. Wash vehicle and vacuum (not in station).

5.  In the morning: Daycare while calling Keila, Nelly (mad) where is she?

*Bag her purse & cell phone, clothes (make it look like she walked out). Call my cell phone (help).  (No answer).

6.  (Work Time).  Go to work explain situation (Try to work).  Make frequent calls to Erika.

7.  Next day, emergency family leave Ask for advice (Don't know)

* Throw away receipts for bag and weights.

(Lodgment No. 3, vol. 4 at 125-27; vol. 5 a 324; Lodgment No. 7 at 6-7.)

Upon discovering the list, Von Der Heyde called her brother and read the list to him.  He told her he believed it was a plan to kill her and told Von Der Heyde he was going to call police.  (Lodgment No. 3, vol. 4 at 125.)  Von Der Heyde agreed with her brother and also called police.  (*Id.*)  The list was powerful evidence of Rivera's intent toward Von Der Heyde and belies Rivera's claim that he only intended to frighten Von Der Heyde when he broke into Vinas's house in the middle of the night armed with two hatchets.

Rivera also contends Vinas's testimony about the struggle he saw in the bedroom was consistent with Rivera's claims that he was defending himself against Anguiano, not attacking him, and that counsel did not use this evidence to support the defense.  (Pet. at 10.)  As discussed above, given the weight of the evidence against Rivera, including Rivera's own testimony, counsel made a reasonable strategic decision to focus on the most serious charges — attempted murder, torture and mayhem — and attempt to rebut the intent element of those crimes.  Rivera admitted to entering a darkened bedroom in the middle of the night armed with two hatchets intending to frighten Von Der Heyde. These facts alone proved the elements of the assault with a deadly weapon charge with regard to Anguiano.  Counsel made a reasonable strategic decision to gain credibility with

the jury by not contesting the burglary and assault with a deadly weapon charge with respect to Anguiano which Rivera's testimony, by itself, proved. Contrary to Rivera's claim, counsel did point to Vinas's testimony as support for the defense by arguing that when confronted by Vinas, Rivera did not attack Vinas but rather ran from the house. This fact, argued counsel, supported Rivera's testimony that he did not intend to kill when he entered the house. (Lodgment No. 3, vol. 6 at 423.)

In any event, as with the preceding claim, Rivera has not established any error committed by counsel prejudiced him. *Strickland*, 466 U.S. at 694. As discussed above, there was overwhelming evidence that Rivera entered the house with the intent to kill Von Der Heyde and Vinas, that he assaulted Anguiano and Shaffer with a deadly weapon, and that he intended to disfigure his victims by using hatchets as his weapon. The jury could have reasonably and logically concluded that Rivera did not attack Vinas when confronted because at that point he was surprised he had attacked the wrong people, was outnumbered, and had lost the element of surprise.

Finally, Rivera contends counsel undermined his defense by telling the jury he had a motive to lie to them. (Pet. at 8.) Counsel's comment must be read in context. Counsel argued as follows:

> Attempted murder is, you know, the direct but ineffectual step toward doing the act. We have a whole series of direct, ineffectual steps towards doing something. The question is: What's that something? As far as the embarkation towards an attempt, the prosecution has proven that. The mere fact that he has taken a hundred mile taxi ride with two hatchets in his pack is a direct step toward something, so there an attempt. The question is of what? His comment is, we don't have anything else. We have no other evidence. We have direct evidence from Mr. Rivera, and we have the circumstantial evidence that four, five years [earlier] he's written a fantasy, and we have nothing intervening. We have Mr. Rivera saying, "I was going there to threaten her. I was going there to threaten her, I never had an intent to harm anybody."

> What do we have to support that contention? I will concede, Mr. Rivera has an interest in lying to you. He does. So what we have to do is look and see — well, he says that. Is there anything that supports that? Is there anything we can look at extraneous to what he said that supports that?

> What do we have? When he comes into the bedroom, if you remember the way the bed was situated, according to Samantha's testimony, Chris was against the wall and Samantha was in front of him, according to Mr. Rivera. So the first person in front of him, the first person in front of

him, is Samantha.  Now if this is mistaken identity, and he thinks Samantha is Erika, or if he's there to attack Erika, and there's this woman in front of him in the darkened room, that would have been his first target.  That would have been his first attack.  It didn't happen.  And when we look at Samantha's wounds, they're very consistent with not a direct attack but an accidental attack as a result of his fight with Chris with the slipping and sliding and flailing.

When we listen to Chris's testimony, he's saying, "I come over Samantha and grab this guy."  So we don't have an attack against Samantha.  That seems in my mind to corroborate Mr. Rivera's statement, "I'm there to terrify Erika, so that I can get my way with her, as far as child support and child visitation is concerned."  He's not there to kill her.  He's not there to kill her.

(Lodgment No. 3, vol. 6 at 425-26) (italics added).

Counsel's decision to concede Rivera had "an interest in lying" to the jury was a reasonable, tactical decision in the context of his argument as a whole.  *Richter*, 131 S. Ct. at 788 (stating that in the context of federal habeas review, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard").  As discussed above, counsel's concession was designed to build credibility with the jury and to rely on that credibility to convince them Rivera did not have the requisite intent to murder, torture, or commit mayhem on the victims.  Counsel was at least partially successful, since the jury acquitted Rivera of the torture counts.  In any event, Rivera has not established that counsel's statement, even if it was error, prejudiced him.  *Strickland*, 466 U.S. at 694.  It is common sense the jury was aware that Rivera may have had a motive to lie to the jury.

Rivera has not established counsel undermined his defense because he has not satisfied either prong of the *Strickland* test.  Accordingly, he is not entitled to relief as to this claim.

### 2. *Failure to Cross Examine Victims*

Rivera next contends counsel was ineffective for failing to adequately cross examine Anguiano and Shaffer about inconsistencies between statements they made to investigators before trial and their testimony at trial.  (Pet. at 8-11; Traverse at 30-31.) Rivera claims counsel should have cross examined Anguiano about inconsistent

statements he made regarding: (1) whether he was awakened by being hit with the hatchet or awoke when he heard someone in the room; (2) whether he rolled over onto Samantha to protect her or fell on her after he was struck; and (3) whether he turned on the light in the room during the attack. (Pet. at 9-11; Traverse at 30-31.)  As discussed above, counsel's main focus was on establishing Rivera did not have the required intent to kill when he entered Vinas's house and to build credibility with the jury.  Vigorously cross examining a severely and permanently injured victim, who admitted to having trouble remembering details of the event, over minor discrepancies in his memory of the incident would not have helped Rivera.  Although Anguiano's statements to police did evolve over time, this would have easily been explained by the prosecution on re-direct examination.  Anguiano admitted his memory was not good and he told the district attorney investigator he remembered things more clearly as time went on. (Pet'rs Ex. A at 5.)  At his last interview on December 9, 2009, Anguiano told the District Attorney Investigator that on the night of the attack he was sleeping and awoke, hearing the dog barking.  He leaned over Shaffer to get his glasses and was struck by something, then fell on Samantha.  While he was fighting with the attacker, he turned the lights in the room on.  (*Id.*)  This is entirely consistent with his trial testimony, and thus no strategic advantage would have been gained from a more vigorous cross examination. (Lodgment No. 3, vol. 3 at 54-55.)

Rivera also faults counsel for failing to adequately cross examine Shaffer.  (Pet. at 10-11; Traverse at 27-30.) Specifically, he claims counsel should have cross examined her about: (1) her description of Rivera as "a complete madman" who was screaming while striking Anguiano; and (2) her statement that Rivera was playing with the hatchet and watching Anguiano after the bedroom light came on.  (*Id.*)  Rivera does not explain how cross examining Shaffer about the screaming would have helped his defense enough to alter the outcome of the trial. *Strickland*, 466 U.S. at 694.  And, Shaffer's statement that Rivera was playing with the hatchet while watching Anguiano is not entirely inconsistent with her statement to investigators.  On July 9, 2009, Shaffer told

investigators that once Anguiano managed to turn the bedroom light on, she could see the attacker standing there with an axe in his hand and a look of surprise on his face. (Pet'rs Ex. B at 20.)  Vinas also told investigators Rivera had a look of shock on his face after Vinas pulled Rivera away from Anguiano. (Petr's Ex. C at 33.)  In any event, even if counsel should have more vigorously cross examined Shaffer, Rivera has not established he was prejudiced by any such failure because, as discussed above, the evidence of his guilt was overwhelming.  Accordingly, he is not entitled to relief as to this claim.

### 3. *Failure to Request Adequate Jury Instructions*

Rivera next faults counsel for failing to request CALCRIM 3404 on the defense of accident or misfortune, and CALCRIM 3470 on self defense. (Pet. at 11; Traverse at 31.)  Rivera claims CALCRIM 3404 was relevant to counsel's argument that the attack on Shaffer was not intentional, and CALCRIM 3470 was relevant to Rivera's claim that he did not intend to injure Anguiano but rather was defending himself from attack. (Pet. at 11; Traverse at 31.)  CALCRIM 3404, as applicable to general and specific intent crimes reads, in pertinent part, as follows:

> The defendant is not guilty of [insert crime[s]] if he acted without the intent required for that crime, but acted instead accidentally.  You may not find the defendant guilty of [insert crime[s]] unless you are convinced beyond a reasonable doubt that he acted with the required intent.

CALCRIM 3404.

"[T]he claim that a [crime] was committed through misfortune or accident 'amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime.'"  *People v. Jennings*, 50 Cal.4th 616, 674 (2010).  Thus, even if it was error for counsel to have failed to ask that the jury be instructed on the defense of accident, Rivera has not established prejudice. *Strickland*, 466 U.S. at 694.  The jury was properly instructed that in order to find Rivera guilty of the attack on Shaffer, they had to conclude, beyond a reasonable doubt, he acted with the requisite intent. (*See* Lodgment No.1 at 0176-80.)  The jury's guilty verdict on the aggravated mayhem and assault with a deadly weapon charges indicates they did so find.  Thus, even

1   if counsel had asked for the accident instruction and the trial court agreed to give it, the

2   result of the proceedings would not have been different.  *Strickland*, 466 U.S. at 694.

3        Rivera also faults counsel for failing to request self defense jury instructions.  (Pet.

4   at 11.)  During discussions on jury instructions, the trial judge told defense counsel the

5   following:

6        THE COURT: Okay.  I did give counsel on both sides a case about
         self-defense under a situation, which is quite similar to this.  I will cite it.
7        *People v. Szadziewies*, S-Z-A-D-Z-I-E-W-I-E-S, a 2008 case, 161 Cal. App.
         4th 823.[6]

8        Based on that case, just for the record, if you were requesting
9        self-defense, based on the facts that I know, I would not be giving
         self-defense instructions.  Does that preserve your record?

10       MR. BERNSTEIN: Thank you.  It's perfect.

11

12  (Lodgment No. 3, vol. 6 at 370.)

13       Given the trial judge's decision, counsel cannot be faulted for failing to continue

14  to argue with the judge about the applicability of self defense instructions to Rivera's

15  case.  *Strickland*, 466 U.S. at 687.  Moreover, as discussed more thoroughly below in

16  section IV(F) of this Report and Recommendation below, the trial judge's decision is

17  supported by California law.  As the state judge noted, "a defendant who — through his

18  own wrongful conduct, such as initiating a physical assault or committing a felony — has

19  created circumstances under which his adversary's attack or pursuit is legally justified

20  may not invoke unreasonable self-defense."  *People v. Szadziewicz*, 161 Cal. App. 823,

21  834 (2008) (internal citations omitted).  Rivera initiated a physical assault on Anguiano

22  and Shaffer by entering into their darkened bedroom in the middle of the night without

23  their consent and armed with two hatchets.  Anguiano was legally justified in defending

24  himself from that assault.

25       In any event, Rivera has not established he was prejudiced by counsel's alleged

26  error because he has not shown the result of the trial would have been different had

27  ──────────────

28       [6] The trial judge misspelled the case name, which is spelled S-Z-A-D-Z-I-E-W-I-
    C-Z.

-18-

counsel requested self defense instructions. *Strickland*, 466 U.S. at 694. The trial judge clearly indicated he would not give the instruction even if asked, and there is no likelihood the jury would have concluded Rivera was simply trying to defend himself from Anguiano, who was unarmed and awoken from sleep by Rivera's unlawful entry.

For all the foregoing reasons, Rivera has failed to establish either that counsel committed errors or that he was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 687, 694. Accordingly, he is not entitled to relief as to this claim.

### 4. *Failure to Object to the Prosecutor's Misconduct*

In Rivera's final claim of ineffective assistance of counsel, he contends counsel should have objected to misconduct by the prosecutor during closing argument. (Pet. at 11; Traverse at 31.) Specifically, Rivera claims the prosecutor told the jury Rivera only stopped assaulting Anguiano and Shaffer with the hatchets because "others intervened to stop the attack." (*Id.*) This, Rivera claims, was in contradiction to Vinas's testimony that he saw only a "struggle" when he arrived at Anguiano's room, not an attack, and that Rivera had stopped fighting "of his own free will." (*Id.*)

Vinas testified he went to Anguiano's room when he heard screaming in the middle of the night. (Lodgment No. 3, vol. 5 at 239.) He saw two men struggling. (*Id.*) He saw Anguiano had grabbed one of Rivera's arms. (*Id.*) At that point, he put Rivera in a "lock" by grabbing Rivera from the back, putting his arms under Rivera's armpits, and pulling him back and out the door. (*Id.* at 242-43.) He then forced Rivera to drop the weapon. (*Id.* at 243-44.) During closing argument, the prosecutor argued as follows:

> [THE PROSECUTOR]: Now the fact that he didn't succeed in killing Erika and Jesus, the fact that he never got to the point of violence against them is not a defense in this case. Every attempted murder is an effectual attempt at trying to kill someone. It means it didn't work out. There was some problem there. Look at some possible intervening circumstances . . . .Others intervene to stop the attack. You are in the middle of trying to kill somebody, and somebody comes up and wraps you up from behind so you no longer can continue the attack, that's an intervening factor. Again, doesn't change the fact you've already taken that direct step, just was the explanation [of] why this is attempted murder instead of murder.

(Lodgment No. 3, vol. 6 at 403-04.)

And on rebuttal, the prosecutor stated as follows:

> [THE PROSECUTOR]: The fact that — I want to deal with the fact that Mr. Bernstein said that Rivera never actually went after Jesus. That's proof that he wasn't going after him. Well, what did Jesus testify to? What did Rivera testify to? Jesus said he went in the room, and he grabbed Rivera from behind. He described how he put his arms underneath Rivera and locked them up and had a hand with the hatchet. Rivera didn't just go after Jesus because he couldn't go after Jesus. Jesus had him in a hold. Jesus had the hand with the hatchet; and by then the attack was over. It already had lost momentum. Nothing says it has to be a suicide attack, and you have to be effective, or you have to be successful for it to be attempted murder.
>
> Going back to the jury instructions, there is no requirement for violence. A lot of things can stop the attack well before the violence. Jesus stopped the attack because he grabbed him from behind and made him drop the hatchet. The attack was over.

(Lodgment No. 3, vol. 6 at 433-34.)

The prosecutor did not argue false evidence to the jury. Vinas testified he saw Anguiano and Rivera struggling when he entered the bedroom. Anguiano had a hold of Rivera's arm — most likely in an attempt to stop Rivera from hitting him with the hatchet — and at that point Vinas grabbed Rivera, dragged him out of the room, and forced him to drop the hatchet. The prosecutor properly argued reasonable inferences from Vinas's testimony, that Vinas stopped Rivera's attack by grabbing him and dragging him out of the room. Thus, defense counsel was not ineffective for failing to object to it. *Strickland*, 466 U.S. at 687. Rivera is not entitled to relief as to this claim.

### D. *Ineffective Assistance of Appellate Counsel (claim one)*

Rivera argues appellate counsel was also ineffective. First, he contends appellate counsel was ineffective for failing to argue trial counsel was ineffective for the reasons discussed above. (Pet. at 6-7; Traverse at 19-22, 26-27.) In addition, he argues appellate counsel was ineffective for failing to argue trial counsel was ineffective for failing to introduce any evidence of Rivera's intent to escape from the altercation with Anguiano. (Pet. at 6-7; Traverse at 19-22, 26-27.)

The *Strickland* test applies to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). A petitioner must first show that his appellate counsel's performance fell

below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. He must then establish he was prejudiced by counsel's errors. *Id.* at 694. To establish prejudice, a petitioner must demonstrate that he would have prevailed on appeal absent counsel's errors. *Smith*, 528 U.S. at 285. Appellate counsel is not required to raise frivolous or meritless claims on appeal. *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012).

As discussed above, none of the instances of trial counsel's performance cited by Rivera amount to ineffective assistance of counsel. Appellate counsel, therefore, cannot be said to have been ineffective for failing to raise them. *Jones*, 691 F.3d at 1101.

As to Rivera's claim that trial counsel should have introduced evidence of his intent to escape from the confrontation with Anguiano, and appellate counsel should have raised this on appeal, Rivera fails to meet the *Strickland* and *Smith* standards. Counsel did present evidence of Rivera's intent to escape. Rivera testified that after he entered the room, Anguiano grabbed him by the left leg, Rivera tried to escape but became off balance and fell toward Anguiano. (*Id.* at 305.) Rivera testified he then felt a blow to his head and tried to escape, but Anguiano held onto him. (*Id.*) Rivera testified that at one point he got away and tried to walk toward the bedroom door but was grabbed from behind by Anguiano. Anguiano grabbed Rivera's sweatshirt and pulled it over Rivera's head, trapping his arms. (*Id.* at 307.) They fell down, struggling with each other, and Rivera testified he was trying to get away from Anguiano. He was able to stand up and the bedroom door opened; Vinas was standing there. (*Id.* at 307-08.) Vinas told Rivera to leave and he ran out of the house. (*Id.* at 310-11.) Rivera does not explain what other evidence trial counsel should have presented or how that evidence would have altered the outcome of his trial, nor how he would have prevailed on appeal had appellate counsel raised this claim on appeal. *Strickland*, 466 U.S. at 687, 694; *Smith*, 528 U.S. at 285. Accordingly, he is not entitled to relief as to this claim.

E. *Prosecutorial Misconduct (claim three)*

Rivera next contends the prosecutor committed misconduct by arguing false evidence to the jury. (Pet. at 12; Traverse at 32-33.) Specifically, Rivera contends the

13cv2708

prosecutor falsely argued that Vinas intervened and stopped Rivera's attack on Anguiano. (*Id.*)   Rivera contends Vinas never testified he saw him attacking Anguiano, only that there was a struggle, and that he stopped his attack of his own free will once the bedroom light came on.  (Pet. at 12; Traverse at 32-33.)

Rivera raised this claim in the habeas corpus petition he filed in the California Supreme Court.  (Lodgment No. 14.)  That court denied the petition without citation of authority.  (Lodgment No. 15.)  Rivera also raised this claim in the habeas corpus petitions he filed in the state appellate court and the San Diego Superior Court. (Lodgment Nos. 10, 12.)  Neither court addressed the claim in their orders.  (Lodgment Nos. 11, 13.)  Thus, this Court must conduct an independent review of the record to determine whether the state court's denial was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Himes*, 336 F.3d 848, 853.

A prosecutor may argue reasonable inferences drawn from the evidence presented at the trial.  *See Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986) (stating that a prosecutor may argue reasonable inferences based on the evidence); see also *Ceja v. Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993) and stating that "counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom").  Moreover, "[i]t is not enough that the prosecutor's remarks [or actions] were undesirable or even universally condemned."  *Darden*, 477 U.S. at 181.  Rather, a prosecutor commits misconduct when his or her actions "'so infect . . . the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).)  "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"  *Id.*  (quoting *Donnelly*, 416 U.S. at 642). )

As discussed above, the prosecutor's argument accurately reflected Vinas's testimony.  Vinas testified he saw two men struggling when he went to investigate the

-22-

screaming he heard.  (Lodgment No. 3, vol. 5 at 239.)  Anguiano was holding one of Rivera's arms.  (*Id.*)  Vinas grabbed Rivera from the back, putting his arms under Rivera's armpits, pulled him out of the room, and forced Rivera to drop the weapon.  (*Id.* at 242-44.)  The prosecutor argued the evidence showed Rivera had committed attempted murder even if"[o]thers intervene[d] to stop the attack."  (Lodgment No. 3, vol. 6 at 404.)  Further, he argued Vinas said he "went in the room, and he grabbed Rivera from behind [and] . . . put his arms underneath Rivera and locked them up . . . ."  (*Id.* at 433.)  He further noted that "Rivera didn't just go after Jesus because he couldn't go after Jesus. Jesus had him in a hold.  Jesus had the hand with the hatchet; and by then the attack was over."  (Lodgment No. 3, vol. 6 at 433-34.)  There was no prosecutorial misconduct, and Rivera is not entitled to relief as to  this claim.

F.  *Jury Instruction Error (claim four)*

Finally, Rivera contends the trial court erred by failing to instruct the jury on the defense of accident (CALCRIM 3404) and self defense.  (Pet. at 14.)  Respondent argues the claim is procedurally defaulted, and that, in any event, neither instruction was warranted.  (Mem. of P. & A. Supp. Answer at 28-34.)

Rivera raised this claim in the habeas corpus petition he filed in the California Supreme Court.  (Lodgment No. 14.)  That court denied the petition without citation of authority. (Lodgment No. 15.)  Rivera also raised this claim in the habeas corpus petition he filed in the state appellate court.  (Lodgment No. 12.)  That court did not address this claim in its order.  (Lodgment No. 13.)  Rivera also raised this claim in the habeas corpus petition he filed in the San Diego Superior Court.  (Lodgment No. 12.)  That court denied the petition, citing *In re Dixon*, 41 Cal. 2d 756, 759 (1953) and *In re Waltreus*, 62 Cal. 2d 218 (1965), stating "[a]ll of Petitioner's claims are matters which are on the record and which could have been addressed on appeal."  (Lodgment No. 11 at 2.)

*Dixon* may be a valid state procedural bar, although, as Respondent notes, the Ninth Circuit has not determined that it is independent.  (*See* Answer at 17, citing *Smith v. Crones*, No. 2:07cv2004-AK, 2010 WL 1660240 (E.D. Cal. April 22, 2010); *see also*

*Reyes v. Cash*, No. EDCV 13-1248 ODW (FFM), 2014 WL 3734550 (July 28, 2014); *Cortina v. Director of Corrections and Rehabilitation*, No. ED CV 13-00349 DOC (VBK), 2013 WL 3946538 (C.D. Cal. 2013).  And, the Ninth Circuit has concluded a *Waltreus* denial is neither a valid state procedural bar nor a decision on the merits.  *Hill v. Roe*, 321 F.3d 787, 789 (9th Cir.2003).

Established precedent in this Circuit dictates that a court's decision on the issue of procedural default is to be informed by furthering "the interests of comity, federalism, and judicial efficiency." *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).  Thus where, as here, deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claims on their merits and forgo an analysis of cause and prejudice.  *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982).

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988), citing *Stevenson v. United States*, 162 U.S. 313 (1896).  When determining whether error occurred, the Court must consider the jury instructions as a whole.  *Id.* at 72.  Jury instruction error is subject to harmless error analysis, that is, if error is found, relief can only be granted if it had a substantial and injurious effect on the jury's verdict.  *California v. Roy*, 519 U.S. 2, 6 (1996); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

As to Rivera's claim the jury should have been instructed on the defense of accident with regard to the crimes against Shaffer, he is not entitled to relief.  The California Supreme Court has stated that "assuming the jury received complete and accurate instructions on the requisite mental element of the offense, the obligation of the trial court in each case to instruct on accident extend[s] no further than to provide an appropriate pinpoint instruction upon request by the defense." *People v. Anderson*, 51 Cal. 4th 989, 998 (2011).  In Rivera's case, the jury was properly instructed that in order to convict him of assault with a deadly weapon, they had to find, beyond a reasonable

doubt, that he intentionally "did an act with a deadly weapon . . . that by its nature would directly and probably result in the application of force to a person," and that he did the act willfully.  (Lodgment No. 1 at 0163, 1078.)

Rivera was also not entitled to self defense instructions given the facts of his case. The California Supreme Court has discussed imperfect self defense as follows:

> Imperfect self-defense is the [attempted] killing of another human being under the actual but unreasonable belief that the [defendant] was in imminent danger of death or great bodily injury.  (*E.g., People v. Cruz* (2008) 44 Cal.4th 636, 664, 80 Cal.Rptr.3d 126, 187 P.3d 970).  Such a killing is deemed to be without malice and thus cannot be murder.  (*E.g., ibid.*)  The doctrine of imperfect self-defense cannot be invoked, however, by a defendant whose own wrongful conduct (for example, a physical assault or commission of a felony) created the circumstances in which the adversary's attack is legally justified. [footnote omitted] (*E.g., People v. Valencia* (2008) 43 Cal.4th 268, 288, 74 Cal.Rptr.3d 605, 180 P.3d 351.

*People v. Booker*, 51 Cal. 4th 141, 182 (2011).

Rivera was not entitled to self defense instructions because his own wrongful conduct — entering Vinas's house and a darkened bedroom inside the house in the middle of the night, without permission, armed with two hatchets, and for the purpose of scaring or threatening Von Der Heyde — "created the circumstances in which [Anguiano's] attack [was] legally justified."  *Id.*

For all the foregoing reasons, the denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Himes, Rivera is not entitled to relief as to this claim.

F.  *Request for an Evidentiary Hearing*

On page 37 of Rivera's Traverse, he asks this Court to conduct an evidentiary hearing on his claims.  (Traverse at 37.)  Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing."  *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999).  The provisions of 28 U.S.C. § 2254(e)(2) control this decision:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

              (A) the claim relies on –

                     (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

                     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

              (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West 2006).

In order to determine whether to grant an evidentiary hearing, the court must first "determine whether a factual basis exists in the record to support the petitioner's claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (citing *Baja*, 187 F.3d at 1078).  If not, the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" *Id.* at 669-70.  A failure to develop the factual basis of a claim in state court implies "some lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *See Williams v. Taylor*, 529 U.S. 420, 432 (2000).  The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

Pursuant to *Pinholster*, Rivera is limited to the facts presented to the state court. In *Pinholster*, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review must be confined to the record that was before the state court. *Pinholster*, 131 S. Ct. at 1398.  Rivera can only proceed to develop additional evidence in federal court if either § 2254(d)(1) or (d)(2) is first satisfied. *See Sully v. Ayers*, 725 F.3d 1057, 1076 (9th Cir. 2013) (stating that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief" and citing *Pinholster*, 131 S. Ct. at 1411, n. 20).  It has not been here for all the reasons discussed above.  Accordingly, the Court recommends Rivera's request for an evidentiary

1  hearing be **DENIED**.

2  **V.    CONCLUSION**

3       The Court submits this Report and Recommendation to United States District

4  Judge Marilyn L. Huff under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of

5  the United States District Court for the Southern District of California.

6       Further, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1)

7  approving and adopting this Report and Recommendation, and (2) directing that

8  Judgment be entered **DISMISSING** Kamala Harris as Respondent, **DENYING** Petition

9  for Writ of Habeas Corpus and **DENYING** the request for an evidentiary hearing.

10      **IT IS ORDERED** that no later than **November 10, 2014** any party to this action

11  may file written objections with the Court and serve a copy on all parties. The document

12  should be captioned "Objections to Report and Recommendation."

13      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

14  the Court and served on all parties no later than **November 24, 2014**. The parties are

15  advised that failure to file objections within the specified time may waive the right to

16  raise those

17  objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th

18  Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

19      **IT IS SO ORDERED**.

20  DATED:  October 8, 2014

21

22  DAVID H. BARTICK
    United States Magistrate Judge

23

24

25

26

27

28

13cv2708